# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of          )
                                           )   No. 71714-6-I
GABRIEL Y. LEE,                            )   (consolidated with
                                           )   No. 71715-4-I)
        Appellant/Cross Respondent,        )
                                           )   DIVISION ONE
                v.                         )
                                           )   UNPUBLISHED OPINION
CAROL ANN KENNARD,                         )
                                           )
        Respondent/Cross Appellant.        )   FILED: June 29, 2015
                                           )

APPELWICK, J. — Lee appeals from the trial court's order on remand finding that the separation agreement, which had been incorporated into the decree of dissolution, was enforceable. In addition, Lee appeals the prospective enforcement of the maintenance escalator and the award of attorney fees to Kennard. Kennard also appeals, challenging the application of laches to the enforcement of the maintenance escalator. Lee's unconscionability challenge to the validity of the separation agreement was untimely and should not have been considered. However, the trial court properly concluded that the agreement was enforceable. The trial court did not abuse its discretion when it determined that retroactive enforcement of the maintenance escalator was barred by laches or when it calculated the prospective application of the maintenance escalator. Attorney fees were properly awarded below. We affirm.

## FACTS

This is the second appeal before this court involving the separation agreement between Gabriel Lee and Carol Kennard. See In re Marriage of Lee, 176 Wn. App. 678, 310 P.3d 845 (2013) (Lee I). The details and terms of the parties' separation are set forth

in our previous opinion. See id. at 682-84. Only those relevant to this appeal are repeated here.

The separation agreement awarded Kennard monthly spousal maintenance, the amount of which to "'be adjusted every three years based upon the cost of living index.'" Id. at 682. The agreement was incorporated into a decree of dissolution, and the decree and child support order were entered ex parte on February 11, 2000.

Kennard did not seek to enforce the escalator until 2011, when she moved for past due maintenance based on Lee's failure to pay cost of living increases since 2000. See id. at 683-84. Lee sought to have the maintenance escalation clause declared void, because it was tied solely to the consumer price index (CPI). Id. at 684. The trial court held that the escalator was unenforceable. Id. Kennard appealed. Id.

We reversed, reasoning that, while the court cannot impose a CPI escalator, the parties can agree to such a provision:

> Lee and Kennard agreed to an automatic, nonmodifiable spousal maintenance escalation clause based on the cost of living index. Unless it is found unfair at the time of execution, the court must enforce that agreement according to its terms. Below, Lee did not allege that the agreement was unfair at the time it was entered into, and the trial court made no such finding. The argument instead focused on whether the escalator was unenforceable as a matter of law. Therefore, we hold that the trial court erred as a matter of law in holding that the spousal maintenance escalation clause was void and unenforceable.

Id. at 687-88. We remanded the issue of the maintenance escalator to the trial court. Id. at 693. We further directed, "Unless the separation agreement is set aside, Kennard is entitled to an award of reasonable attorney fees incurred related solely to the maintenance issue, in the prior proceeding below, on appeal, and on remand." Id.

2

On remand, Lee moved for summary judgment, arguing that the separation agreement was unconscionable and thus unenforceable. Lee further asserted that, under the equitable doctrine of laches, Kennard was barred from enforcing the escalator. Kennard opposed Lee's motion and moved for judgment for past due maintenance and for attorney fees.

The trial court interpreted our decision as "mandating the trial court to make a determination whether the settlement agreement was unfair at the time of execution." Although the trial court found that the agreement was substantively unfair, it found that the agreement was procedurally fair and thus enforceable. The court further concluded that retroactive application of the escalator was barred by laches, reasoning that it was "fundamentally unfair for [Kennard] to strategically sit on her rights while accruing 12% interest while [Lee] has abided by the terms of the agreement and would be financially prejudiced by the retroactive application of the [CPI] escalation clause." Accordingly, the court held that "the escalation clause shall apply to current maintenance from the time [Kennard] filed this action on October 18, 2011." It awarded attorney fees to Kennard.

Both parties appeal.[1]

## DISCUSSION

Lee asserts that substantive unconscionability was sufficient to render the separation agreement unenforceable. He also argues that, even if the agreement is enforceable, the trial court erred in calculating the amount of prospective maintenance based on the CPI increase, because the court used the wrong base year in making its

---

[1] In addition, both parties moved this court to strike portions of the other's briefing. We deny both motions.

3

calculation. He further asserts that the trial court erred in awarding Kennard attorney fees as the prevailing party. Kennard cross appeals, challenging the trial court's application of Lee's laches defense to bar retroactive enforcement of the maintenance escalator.

I.    Maintenance Escalation Clause

Lee argues that the trial court should not have enforced the maintenance escalator, because substantive unconscionability alone can support a finding of unconscionability. We do not reach this argument, however, because Lee's unfairness challenge to the separation agreement is time-barred.

Under RCW 26.09.070(3), if one or both parties to a separation contract petition for dissolution of their marriage, the contract "shall be binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties . . . that the separation contract was unfair at the time of its execution." The parties' separation agreement was incorporated into a decree of dissolution, which became a final order in 2000. Prior to entry of the dissolution decree, the court did not find that the agreement was unfair.[2]

We have previously recognized this constraint on challenges to the fairness of separation contracts. See In re Marriage of Glass, 67 Wn. App. 378, 390, 835 P.2d 1054 (1992); see also In re Marriage of Hulscher, 143 Wn. App. 708, 717, 180 P.3d 199 (2008). In Glass, we stated that any challenge to a separation contract's unfairness "must be

---

[2] We recognize Lee's assertion that the court commissioner who entered the parties' decree did not affirmatively determine whether the separation agreement was fair. However, Lee did not raise this issue below. His lawyer advised him that the agreement was unfair and withdrew representation when Lee nonetheless chose to enter into the agreement. Lee establishes no facts surrounding the agreement's presentation that would give rise to a collateral attack on the order.

made prior to the entry of the decree by which the separation contract is approved by the court." 67 Wn. App. at 390. This principle was reiterated in Hulscher:

> Martin did not claim that the spousal maintenance provision was unfair until nearly a year after the trial court approved and entered the decree. But a party must make such a challenge before the trial court's approval and entry of the decree. RCW 26.09.070(3), (7); Glass, 67 Wn. App. at 390. As the Glass court astutely observed, "[i]f such a challenge were to be allowed years later, at the time of a modification proceeding, the provisions of RCW 26.09.070(3) and (7) would be rendered meaningless." Glass, 67 Wn. App. at 390. Consequently, Martin's claim that the spousal maintenance provision was unfair at the time of execution is thus time-barred.

143 Wn. App. at 717.

Lee attempts to distinguish Glass and Hulscher, arguing that he relies on RCW 26.09.070(6), while those cases looked to RCW 26.09.070(3) and (7).[3] Under subsection (6), the terms of a separation agreement remain enforceable as contract terms despite being merged into a decree. This permits parties to raise contract defenses to the agreement, such as Lee's laches defense. However, subsection (3) informs the reading of subsection (6), excluding unconscionability from the available contract defenses. Otherwise, subsection (3) "would be rendered meaningless." Glass, 67 Wn. App. at 390.

Lee also cites several cases for the proposition that a trial court has the authority to refuse to enforce a maintenance agreement that it finds substantively unfair. But, the cases he cites are inapposite: none involve a challenge to a separation agreement that has been incorporated into a final decree. See In re P'ship of Rhone, 140 Wn. App. 600,

---

[3] RCW 26.09.070(7) provides:
    When the separation contract so provides, the decree may expressly preclude or limit modification of any provision for maintenance set forth in the decree. Terms of a separation contract pertaining to a parenting plan for the children and, in the absence of express provision to the contrary, terms providing for maintenance set forth or incorporated by reference in the decree are automatically modified by modification of the decree.

604-05, 166 P.3d 1230 (2007) (trial court made equitable amendment to order under its continuing jurisdiction); In re Marriage of Hansen, 24 Wn. App 578, 579, 602 P.2d 369 (1979) (trial court refused to incorporate unfair separation agreement into dissolution decree); In re Marriage of Olsen, 24 Wn. App. 292, 298, 600 P.2d 690 (1979) (separation agreement and decree were not merged).

Lee further maintains that, under the law of this case, the trial court was required to consider the fairness of the separation agreement. This is a misreading of our previous opinion. In Lee I, we held that In re Marriage of Coyle, 61 Wn. App. 653, 811 P.2d 244 (1991) did not preclude the parties from agreeing to a CPI-based maintenance escalator. See 176 Wn. App. at 686-88. In reaching this conclusion, we stated the general principle that "[u]nless [a separation agreement] is found unfair at the time of execution, the court must enforce that agreement according to its terms." Id. at 687. We did not command the trial court to determine the fairness of the separation agreement. And, as we stated in our order denying Kennard's motion to recall the mandate, we did not intend to imply disagreement with Hulscher. We were merely acknowledging that, unless there was some basis—other than the CPI escalator clause—on which to set aside the agreement, Kennard would prevail. We did not mean to say that such a basis existed. Regardless, as RCW 26.09.070(3) makes clear, the time for challenging fairness is at the time of entry of the decree.

Lee's unfairness challenge is time-barred. The trial court properly deemed the escalation clause enforceable.

II.  Laches Defense

Kennard argues that the trial court erred in applying Lee's laches defense to bar the retroactive enforcement of the maintenance escalator.  "A person defensively asserting laches must establish (1) the claimant had knowledge of the facts constituting the cause of action or a reasonable opportunity to discover such facts; (2) unreasonable delay on the part of the claimant in commencing the action; and (3) damage to the person asserting laches."  In re Marriage of Dicus, 110 Wn. App. 347, 357, 40 P.3d 1185 (2002).

Laches is an equitable remedy, the application of which we generally review for an abuse of discretion.  See In re Marriage of Capetillo, 85 Wn. App. 311, 319, 932 P.2d 691 (1997).  However, Lee raised his laches defense in his summary judgment motion on remand.[4]  We review de novo all rulings made in conjunction with a summary judgment motion.  Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).  Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  CR 56(c); Peterson v. Groves, 111 Wn. App. 306, 310, 44 P.3d 894 (2002).  When considering the evidence, we draw reasonable inferences in the light most favorable to the nonmoving party.  Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

First, Kennard asserts that the laches defense was beyond the scope of this court's mandate on remand.  This argument is meritless.  See In re Marriage of Rockwell, 157 Wn. App. 449, 453, 238 P.3d 1184 (2010) (on remand, the trial court should "exercise its discretion to decide any issue necessary to resolve the case").

---

[4] Kennard complains that the trial court mischaracterized her motion below as a summary judgment motion.  However, she does not articulate prejudice suffered as a result of this characterization.

7

Second, Kennard asserts that the merger doctrine precluded the trial court from applying laches. Under the merger doctrine, "[w]here a property settlement agreement is approved by a divorce decree, the rights of the parties rest upon the decree rather than the property settlement." See Mickens v. Mickens, 62 Wn.2d 876, 881-82, 385 P.2d 14 (1963). However, under RCW 26.09.070(6), when a separation agreement has been incorporated into a dissolution decree, the agreement's terms remain enforceable as contract terms. Moreover, laches is an available defense against an obligation contained in a final decree. See, e.g., In re Marriage of Watkins, 42 Wn. App. 371, 372, 374-75, 710 P.2d 819 (1985) (applying laches to bar enforcement of child support obligation under dissolution decree). Merger has no bearing on Lee's ability to raise his defense of laches.

Third, Kennard asserts that there were genuine issues of material fact as to the reasonableness of her delay to seek enforcement of the escalation clause. Specifically, there are two potential reasons for Kennard's delay.

Kennard submitted a declaration in which she stated that "every time I attempted to address [the maintenance escalator] with [Lee], he would claim he was always 'too broke' to abide by the terms of the agreement." Kennard cites In re Marriage of Hunter, 52 Wn. App. 265, 270-71, 758 P.2d 1019 (1988), to assert that Lee's inability to pay justified her delay in seeking enforcement. In Hunter, the husband had not paid child support for seven years, which he admitted was due to his lack of income. Id. at 271. Accordingly, the wife's lawyer "advised her that it would not be fruitful" to take legal action. Id. The court held that, under these circumstances, the wife's delay in seeking past due child support was reasonable. Id. Unlike the husband in Hunter, Lee continued to make child support payments that exceeded his obligation, as well as maintenance payments

8

at the original level. Lee I, 176 Wn. App. at 683. Kennard does not show that it would have been fruitless to pursue legal action due to Lee's alleged inability to pay. This was not a reasonable justification for Kennard's delay.

Kennard also cites Capetillo, 85 Wn. App. at 317-18, where the wife was reluctant to pursue past due support because she did not want the husband to enforce his visitation rights. The court found that this reluctance did "not appear unreasonable, considering her testimony that he could be abusive to the children." Id. at 317-18. There is no similarly compelling rationale here. Lee was paying his child support and more. If Kennard's delay was to avoid litigating and adjusting or modifying child support, the trial court did not err in finding her delay unreasonable.

Fourth, Kennard asserts that Lee's laches motion failed to include an accompanying financial declaration. Under King County Family Law Rule (KCFLR) 10(a)(1)(B), financial information is required for any motion concerning spousal maintenance. However, the trial court has the inherent authority to waive its rules. Raymond v. Ingram, 47 Wn. App. 781, 784, 737 P.2d 314 (1987). Unless the record shows that an injustice has been done, we will presume that the trial court disregarded the rule for sufficient cause. Id.; Snyder v. State, 19 Wn. App. 631, 637, 577 P.2d 160 (1978).

Here, the record shows no injustice. Under KCFLR 10(a)(2), a party may use a previously prepared financial declaration if all information in that declaration remains accurate. Lee submitted a financial declaration in October 2011. This declaration provided the information relevant to his motion, because his laches defense applied only retroactively—i.e., until 2011. Moreover, in conjunction with his laches motion, Lee

9

submitted a detailed declaration regarding the choices he made based on Kennard's delay in enforcing the CPI increase and the hardship it would cause him to pay the retroactive increase.

Fifth, Kennard asserts that the reliance element of laches was not satisfied.[5] But, Lee submitted a declaration stating that

> I balanced what I thought to be my family's present needs based on [Kennard]'s agreement not to enforce the [cost of living adjustments (COLAs)] in exchange for post-secondary family support accommodations I made to her. I thought the retirement investments I chose then were adequate. Had I known I would lose almost all of my 401K after 2011, I would have saved more. . . . Also, had I known then that Carol would renege on our mutual accommodation; I would have paid the COLA increase rather than incur 12% per year interest on the increasing debt.

This shows that Lee detrimentally relied on Kennard's previous decision not to enforce the escalator.

Finally, Kennard asserts that the damages element was not satisfied. Regarding damages, the trial court found that Kennard's delay in enforcing the escalator caused an "irrevocable and detrimental change of [Lee's] financial position." Specifically, the trial court noted that Lee

> no longer has the ability to modify child support or educations [sic] costs already paid. At this point, [Lee] could not recoup or terminate the $1750 per month pre-majority child support transfer payment that he paid when the standard calculation was less than $700/ month. Similarly, [Lee] cannot recoup the educational support he has funded to his children.

---

[5] Lee argues that reliance is not an element of laches. Capetillo and Hunter indicate that reliance or a change in position is required. 85 Wn. App. at 318; 52 Wn. App. at 271. Regardless, we conclude that reliance is present here.

Kennard asserts that there was no evidence Lee would have sought modification of his obligations or succeeded had he done so. But, in 2007, Lee specifically told Kennard that, regarding their son's education costs,

> I looked at the record of the [Guaranteed Education Tuition] payment history, it turned out that I had actually paid the entire amount (short of the original application fee), which means I had paid for his entire tuition. By my calculation, based on the arrangement that I paid full child support in lieu of [the CPI adjustment] and that we shared college expenses evenly, I will have actually overpaid you by about $1500 at the end of the summer quarter.
>
> Starting this September, I plan on paying Chris directly the child support amount for his living expenses off campus as well as other educational expenses. As long as I paid [sic] that amount to him, I do not feel that I should pay the [CPI increase] at the same time to you. If you insist on me paying you the [CPI increase], then you need to pay Chris the proportional amount for living/educational expenses based on the formula of sharing evenly.

This demonstrates that Lee would have sought to reduce his obligations and enforce Kennard's obligations had Kennard sought to enforce the escalator. And, had Lee sought relief, the evidence demonstrates that he would have been successful. For example, their daughter resided with Lee during her senior year of high school, and Lee did not pursue child support from Kennard for that period.

Kennard further argues that the loss from paying what one owes is not a damage for purposes of laches. However, the maintenance escalator was not self-executing and thus ineffective without a court order. See In re Marriage of Kahle, 134 Wn. App. 155, 160-61, 138 P.3d 1129 (2006). Therefore, until Kennard sought to enforce the escalator, Lee was not legally obligated to pay the CPI increase. Lee made financial choices based on Kennard's agreement not to seek enforcement. The damages element is satisfied here.

The trial court properly granted summary judgment on Lee's laches defense.

III.    Amount of Prospective Maintenance

Lee asserts that the trial court erred in adjusting the prospective amount of maintenance, because it applied the CPI increase since 2000—the year the parties signed the separation agreement. The separation agreement provided that maintenance be adjusted every three years. Accordingly, Lee maintains, the proper base year for the CPI increase was 2008—three years prior to Kennard's 2011 request for enforcement.

An award of maintenance lies within the discretion of the trial court. In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990). Regarding the amount of maintenance, the only limitation is that, in light of the relevant factors, the award must be just. Id.

Here, the parties' agreement does not compel the result Lee seeks. The adjustment provision stated that maintenance "shall be adjusted every three years based upon the cost of living index." This places a three-year limitation on the frequency of adjustments. This implicitly limits the amount of the adjustment, but only if the adjustment in fact occurs every three years.

Quoting the order on cross motions for summary judgment, Lee asserts that it would be unfair to give Kennard "the benefit of the percentage increase in the CPI during the 8 years she 'unfair[ly]' and 'strategically' 's[a]t on her rights.'" This rationale supports the application of laches as to Lee's payment of escalated maintenance in the years he relied on Kennard's choice not to invoke the escalator. But, once Kennard invoked the escalator in 2011, this rationale no longer applied. Going forward, it was not unjust to set

12

maintenance at the rate it would have been had Kennard routinely invoked the escalator as she was entitled to do.

The trial court did not abuse its discretion in calculating the prospective amount of maintenance.

IV.    Attorney Fees

Lee asserts that the trial court erred in awarding attorney fees to Kennard as the prevailing party. Lee argues that, because the trial court rejected Kennard's request for retroactive enforcement of the escalator, Kennard did not substantially prevail.

We generally review a trial court's award of attorney fees for an abuse of discretion. Clausen v. Icicle Seafoods, Inc., 174 Wn.2d 70, 81, 272 P.3d 827 (2012). However, a trial court's decision on statutory entitlement to fees and costs is a question of law reviewed de novo. Mehlenbacher v. DeMont, 103 Wn. App. 240, 244, 11 P.3d 871 (2000).

Under RCW 26.18.160, in "any action to enforce a support or maintenance order under this chapter, the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees." Generally, a prevailing party[6] is one who receives an affirmative judgment in its favor. Cornish College of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 231, 242 P.3d 1 (2010). A defendant can also recover as a prevailing party for successfully defending against the plaintiff's claims. Id. at 231-32. If "both parties prevail on major issues, neither is a 'prevailing party' entitled to attorney fees." In re Marriage of Nelson, 62 Wn. App. 515, 519, 814 P.2d 1208 (1991).

---

[6] Although our case law does not provide a further definition of "prevailing party" under RCW 26.18.160, we will look to other statutes governing attorney fees as persuasive authority. See, e.g., In re Marriage of Nelson, 62 Wn. App. 515, 519, 814 P.2d 1208 (1991).

13

In Nelson, the couple's two dependent children initially resided with the mother, and the father paid child support. Id. at 516. When the son moved in with the father, the father ceased paying child support. Id. One year later, the mother petitioned for modification of child support and moved for entry of judgment for past due support. Id. at 517. The father agreed that modification was proper, but maintained that he did not owe past due support based on an agreement between the parties. See id. at 517, 520.

The commissioner awarded the mother future support payments for the daughter. Id. at 518. The commissioner also awarded the mother past due support, the amount of which was offset based on the son's residency with the father during the delinquency period. Id. The commissioner did not award attorney fees to either party, finding that both had prevailed on major issues. Id.

We reversed, finding that the mother was entitled to fees. Id. at 520. We reasoned that the commissioner awarded the mother a money judgment which was offset only to account for the son's living arrangement. Id. And, we noted that the commissioner rejected the father's defense concerning an agreement between the parties. Id. Therefore, we concluded, the mother was the only party to prevail on a major issue. Id.

Nelson supports the trial court's award of fees in this case. Like the mother in Nelson, Kennard sought affirmative relief and was awarded a money judgment. Like the father in Nelson, Lee defended against the money judgment but sought no affirmative relief of his own. And, like the equitable offset for the Nelson son's living arrangement, the retroactive application of Lee's laches defense did not constitute "prevail[ing] on [a] major issue." See id. at 519. Rather, it merely reduced the amount Kennard was owed in prevailing on her major issue: enforcement of the escalator.

14

Moreover, as in <u>Nelson</u>, this conclusion is "bolstered by the language of the statute itself which prohibits an obligor . . . from being 'considered a prevailing party under [RCW 26.18.160] unless the obligee has acted in bad faith.'" <u>Id.</u> at 520 (alteration in original) (quoting RCW 26.18.160). Lee argues that the trial court's finding that Kennard's delay was unreasonable and strategic is "tantamount to a finding of bad faith." But, "in the absence of an express finding, we will not assume that the judge found bad faith, even where the record would support such a finding." <u>State v. S.H.</u>, 102 Wn. App. 468, 479, 8 P.3d 1058 (2000). We affirm the trial court's award of attorney fees to Kennard.

Kennard requests fees on appeal "consistent with the mandate in this matter, and pursuant to RCW 26.18.160." Kennard has again prevailed on her claim to enforce maintenance and is entitled to reasonable attorney fees incurred on appeal solely with respect to the maintenance issue.

We affirm.

Appelwick, J.

WE CONCUR:

Leach, J.

Becker, J.

15